**Electronically Filed
Intermediate Court of Appeals
30178
28-JUN-2013
07:58 AM**

NO. 30178


IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


CARLA E. LAUSTER, as Trustee of the Carla E. Lauster Trust dated August 25, 2003, STEVEN M. MARKS, SR.; ROBERTA L. BATES; G. DAVID NAHUINA; KEITH WALTER FITCH-McCONNELL; SYLVIA KAY FITCH-McCONNELL; PAUL MICHAEL TREVITHICK; MARY KATHERINE TREVITHICK; TORY M. TAGUMA; CALVIN B. DETWILER, III, Trustee under unrecorded Revocable Trust Agreement of Calvin D. Detwiler, III, dated July 19, 2001; SUSAN H. DETWILER, Trustee under unrecorded Revocable Trust Agreement of Susan H. Detwiler, dated July, 19, 2001; ARCHIE COX; LAVERNE COX; STEPHEN COX; RENETTA COX; STEVEN E. CUSTODE; KIMBERLY A. CUSTODE; PHYLLIS GLEAN HANNON SELLENS, Trustee of The Phyllis Sellens Trust dated May 30, 1991; ROBERT L. BATES, Trustee of The R.L. Bates Trust dated May 30, 1991; GARY J. PRIES; MELISSA A. PRIES; JOHN HAMPDEN MOORE; and BONNIE ALYCE SHANNON-MOORE, Plaintiffs/Counterclaim Defendants/Appellees/Cross-Appellants, v. RICHARD D. ECKERLE, DANIELA ECKERLE, and JOHN DOES, 1-10, Defendant/Counterclaim Plaintiffs/Appellants/Cross-Appellees


APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CIVIL NO. 08-1-157K)


MEMORANDUM OPINION
(By: Fujise, Presiding Judge, Leonard and Reifurth, JJ.)

Plaintiffs/Counterclaim Defendants/Appellees/Cross-Appellants Carla E. Lauster, Steven M. Marks, Sr., Roberta L. Bates, G. David Nahuina, Keith Walter Fitch-McConnell, Sylvia Kay Fitch-McConnell, Paul Michael Trevithick, Mary Katherine Trevithick, Troy M. Taguma, Calvin B. Detwiler, III, Susan H.

Detwiler, Archie Cox, Laverne Cox, Stephen Cox, Renetta Cox, Steven E. Custode, Kimberly A. Custode, Phyllis Glean Hannon Sellens, Robert L. Bates, Gary J. Pries, Melissa A. Pries, John Hampden Moore, and Bonnie Alyce Shannon-Moore (collectively, Plaintiffs) appeal from the October 20, 2009 judgment in which the Circuit Court of the Third Circuit (Circuit Court)[1] awarded $12,000 in damages to Defendant/Counterclaim Plaintiffs/ Appellants/Cross-Appellees Richard D. and Daniela Eckerle (collectively, Defendants) against eleven of the twenty-three Plaintiffs for Daniela Eckerle's (Eckerle) intentional infliction of emotional distress (IIED) counterclaim.[2]

## BACKGROUND

The facts in this case are largely undisputed. On July 30, 2003, Defendants purchased real property (Eckerle Property) designated on the tax maps of the Third Tax Division, State of Hawaii, as Tax Map Key (3)7-3-002-022, from Emma Jane Kapehe (Kapehe). Plaintiffs are owners of various lots located makai of the Eckerle Property in a subdivision known as Ka'u'ilani Estates.

When Defendants purchased the property from Kapehe, it enjoyed a Grant of Access Easement and First Right of Refusal (Easement) over Plaintiffs' properties. The Easement was recorded on August 23, 2002.[3] The Easement read, in part, "The rights herein granted are given solely for access to and from the one single family residence located on the real property described in Exhibit C attached hereto (and not for any commercial, agricultural, multi-family or other uses of such real property) as herein described . . . ." The Easement also specified that

---

[1]     The Honorable Ronald Ibarra presided.

[2]     Defendants' appeal from the October 20. 2009 judgment was dismissed by this court on September 28, 2010.

[3]     Alternative access to the Eckerle Property exists.

> [t]he term of this Grant shall commence upon the recording
> of this Grant in the Bureau of Conveyances of the State of
> Hawaii and shall continue until the earlier to occur of (i)
> the Grantee's breach of any covenant condition or agreement
> contained herein and on the part of the Grantee to be
> observed and performed, which such breach the Grantee shall
> not have cured within thirty (30) days of the receipt of a
> written notice from Grantor of such breach; or (ii) the
> Grantee's use of the real property described in Exhibit C
> attached hereto for any purposes other than one single
> family residence.

The Easement allowed Defendants to access a road that runs through the Ka'u'ilani Estates subdivision to the Eckerle Property. There was a gate at the base of the Easement access road which had been in place since the first homes in the subdivision were built. Plaintiffs possessed keys to unlock the gate, while Defendants did not.[4] Plaintiffs locked the gate to prevent access to Defendants, their guests, or other visitors. Rocks were also placed on the south side of the gate by one of the Plaintiffs to prevent vehicles from driving around the gate.

After their purchase, Defendants grubbed and graded the Eckerle Property to start a coffee farm. They planted approximately 15,000 coffee trees on the Eckerle Property in grow bags or otherwise.

Plaintiff Carla E. Lauster (Lauster) wanted to terminate the easement because of traffic to and the noise and smoke from the Eckerle Property. Other Plaintiffs were bothered by the smoke from burning fires and noise, including noise from generators, coming from the Eckerle Property and did not like the traffic to the Eckerle Property, or the amount or quality of the visitors to the Eckerle Property. Lauster kept a dated journal of people she saw using the Easement to get to the Eckerle Property as well as other activities on the Eckerle Property.

Plaintiffs met several times to discuss the Defendants and what action, if any, to take against them. Defendants received a letter dated February 28, 2008, signed by persons calling themselves "homeowners of the Ka'u'ilani Estates," some of

---

[4]     Kapehe did not receive keys to the lock on the gate.

whom were the Plaintiffs, but with no printed names, illegible signatures, and no contact information. The letter accused Defendants of violating the conditions of the Easement and gave Defendants 30 days to "immediately cancel all pending and approved permits pertaining to the above stated [farm] plan and property, and to cease any and all ongoing operations, or permanently and legally surrender your access easement rights through our subdivision, as provided for by the GRANT."

From approximately 2004 to the time of trial in 2009, Plaintiffs took hundreds of photographs of Defendants, their property, and any visitors to the Eckerle Property. The pictures were taken from various vantage points around the Eckerle Property, including overhead aerial photographs. Plaintiffs stopped and blocked vehicles coming and going to the Eckerle Property along the Easement access road. Plaintiffs Michael Trevithick and Archie Cox entered the Eckerle Property without permission.

Robert Romer (Romer) visited the Eckerle Property and was interested in purchasing it. On one occasion, he encountered people blocking the Easement access road and another time he was "hollered" at by people as he drove on this road. Romer informed Defendants that he did not wish to purchase the Eckerle Property because he did not want to own property near the Ka'u'ilani Estates after those incidents.

Workers from the Department of Water Supply went to the Eckerle Property to install a water meter and encountered Lauster and Plaintiff Kimberly A. Custode (Custode). A discussion between the workers and these Plaintiffs resulted in the workers leaving the area without installing a water meter. It was several months before a water meter was installed.

Eckerle encountered Lauster and Custode in the local grocery store. Eckerle felt that these women gave her "dirty looks" and made her "feel as though [she] had done something wrong." She stated that she had received similar looks from various other Plaintiffs on occasions when she traveled on the

4

Easement access road. Eckerle also encountered Lauster on other occasions where she felt that Lauster had given her "dirty looks." Eckerle also claimed that Lauster approached her parked car and "snooped" around it, making Eckerle very uncomfortable. She saw Plaintiffs take photographs of her home, her guests, and her property and parked cars close to her property. When she approached these persons to ask what they were doing, they drove off. This behavior made her concerned for her safety and the "abuse" she received from the Plaintiffs caused her emotional distress exhibited as depression, anxiety, and fear. Eckerle sought professional medical help for the emotional distress she experienced and incurred medical expenses of approximately $400.00 to $500.00 for services rendered.[5]

At a jury-waived bench trial commencing August 18, 2009, the Circuit Court found that Plaintiffs' concerted conduct, including stopping and blocking vehicles, locking the Easement access road gate to prevent Defendants' vehicles and visitors from accessing the Eckerle Property or using the Easement access road, taking pictures of the Eckerle Property border and overhead aerial photographs, interfering with the work of the Department of Water Supply, and directing dirty looks at Eckerle was reckless and/or intentional conduct. The Circuit Court also found that because there was no evidence that Plaintiffs Steven M. Marks, Roberta L. Bates, Tory M. Taguma, Calvin B. Detwiler, III, Susan H. Detwiler, Laverne Cox, Stephen Cox, Renetta Cox, Gary J. Pries, Melissa Pries, John Hampden Moore and Bonnie Alyce Shannon-Moore participated in, or consented to, the conduct that caused emotional distress to Eckerle, they were not liable to Eckerle for the conduct of the other Plaintiffs. The Circuit Court concluded that the "concerted and cumulative effects of the [remaining Plaintiffs'] actions were outrageous conduct" and caused Eckerle to suffer extreme or severe emotional distress.

---

[5]     Richard Eckerle did not seek professional medical help, although he testified that he suffered anxiety, embarrassment, anger, worry, and had gained over 100 pounds from stress caused by Plaintiffs' conduct.

The Circuit Court also ruled that Eckerle was entitled to general damages in the amount of $12,000.00 as a result of suffering extreme or severe emotional distress and ordered that the Easement be extinguished.[6]

Plaintiffs timely appealed from the October 20, 2009 judgment.

### DISCUSSION

Plaintiffs raise the following points on appeal:

1.  Findings 34, 35, 36, 37, 38, 39, 40, 41, and 42 are clearly erroneous; Conclusions 9, 11 and 12 are wrong and all are unsupported by the evidence.[7]

---

[6]     The Circuit Court extinguished the Easement because the Easement specifically provided that it would continue until, inter alia, the grantees' used the Eckerle Property for any purpose other than one single family residence. Medeiros v. Koloa Sugar Co., 29 Haw. 43, 44-45 (Terr. 1926.) The Circuit Court held that when Defendants planted thousands of coffee seedlings on the Eckerle Property, they breached the covenant that the property be used only for access to a single-family residence and not for "any . . . agricultural . . . uses of such real property."

[7]                          FINDINGS OF FACT

34. Workers from the Department of Water Supply came to the Eckerle Property to install a water meter. The workers encountered [Lauster and Custode]. The discussion between the workers and [Lauster and Custode] resulted in the workers leaving the area without installing a water meter. It was several months before a water meter was installed; during that time [Defendants] also had no access to catchment water and had to go off-site for water. (Testimony of [Richard])

35. [Eckerle] encountered [Lauster and Custode] in the local grocery store. She felt they gave her "dirty looks" and made her "feel as though [she] had done something wrong." She received similar looks from various [Plaintiffs] on occasions when she traveled the Easement access road. (Testimony of [Eckerle]).

36. [Eckerle] encountered [Lauster] on other occasions where she felt that Lauster had given her "dirty looks." On one occasion, Lauster approached [Eckerle]'s parked car and then "snooped" around it, which made her very uncomfortable. (Testimony of [Eckerle]).

38. [Eckerle] testified that the "abuse" she received from [Plaintiffs] caused her emotional distress. (Testimony of [Eckerle]).

(continued...)

6

2.    The Circuit Court erred in its Findings 35, 36, 37, and 39 as individually or collectively providing any basis for its Conclusions 9, 11, 12, and 14.

3.    The Circuit Court erred in its Findings 34, 35, 36, 37, 38, 39, and 40 and Conclusions 9, 11, 12, and 14 by finding and concluding that matters occurring after the filing of the pleadings in the subject litigation were a cause of compensable emotional distress.

4.    The Circuit Court erred in its Findings 34, 35, 36, 37, 38, 39, and 40 and Conclusions 9, 11, 12, and 14 by considering and relying on matters not pled by Eckerle as the basis of an award on her Counterclaim.

5.    The Circuit Court erred in its Conclusion 11 that "The concerted and cumulative effects of the [Plaintiffs'] actions were outrageous conduct."

6.    The Circuit Court erred in its Conclusion 12 that "The concerted and cumulative effect of the [Plaintiffs'] outrageous and reckless conduct caused [Eckerle] to suffer extreme or severe emotional distress."

---

7(...continued)
40. [Eckerle] suffered emotional distress exhibited as depression anxiety, and fear because of [Plaintiffs'] conduct.  (Testimony of [Eckerle]).

CONCLUSIONS OF LAW

9. The [Plaintiffs'] concerted conduct, including stopping and blocking vehicles, locking the Easement access road gate to prevent [Defendants'] vehicles and visitors from accessing the Eckerle Property using the Easement access road, taking pictures of [Defendants] and their visitors traveling the Easement access road and guests staying on the property, taking pictures of the Eckerle Property border and overhead aerial photographs, interfering with work conducted by the Department of Water Supply, and directing "dirty looks" at [Eckerle], is reckless and/or intentional conduct. See Hac.

11. The concerted and cumulative effects of the [Plaintiffs] actions were outrageous conduct.  See Hac.

12. The concerted and cumulative effects of the [Plaintiffs] outrageous and reckless conduct caused Daniela Eckerle to suffer extreme or severe emotional distress.  See Hac.

14. The court concludes the damages in the amount of twelve thousand dollars ($12,000.00) is reasonable compensation.

7.   The Circuit Court erred in its Conclusions 13 and 14 that [Eckerle] was entitled to damages for extreme or severe emotional distress in the amount of $12,000.

Taken as a whole, Plaintiffs' arguments boil down to their fifth point of error, that is, that the conduct involved in this case did not rise to the level of "outrageous conduct" necessary to support an IIED claim.  We agree.

The appellate courts are not bound by the conclusions of law made by the trial court; conclusions of law are "freely reviewable" for their correctness.  Bhakta v. Cnty. of Maui, 109 Hawai'i 198, 208, 124 P.3d 943, 953 (2005).  The elements of the IIED tort are well-established:

> the tort of IIED consists of four elements: "1) that the act allegedly causing the harm was intentional or reckless, 2) that the act was outrageous, and 3) that the act caused 4) extreme emotional distress to another." [Hac v. Univ. of Hawai'i, 102 Hawai'i 92, 106-07, 73 P.3d 46, 60-61 (2003)]. "The term 'outrageous' has been construed to mean without just cause or excuse and beyond all bounds of decency." Enoka v. AIG Hawai'i Ins. Co., Inc., 109 Hawai'i 537, 559 128 P.3d 850, 872 (2006) (citations and some internal quotation marks omitted). "The question whether the actions of the alleged tortfeasor are unreasonable or outrageous is for the court in the first instance, although where reasonable people may differ on that question it should be left to the jury." Takaki v. Allied Machinery Corp., 87 Hawai'i 57, 68, 951 P.2d 507, 518 (App. 1998) (quotations and quotation marks omitted).

Young v. Allstate Ins. Co., 119 Hawai'i 403, 429, 198 P.3d 666, 692 (2008).  An IIED claim generally cannot be based on "threats, annoyances, petty oppressions, or other trivialities." Id. at 425, 198 P.3d at 688 (citation and internal quotation marks omitted); see also Shoppe v. Gucci Am., Inc., 94 Hawai'i 368, 387, 14 P.3d 1049, 1068 (2000) (holding that employer's verbal attacks were not outrageous as a matter of law); Hogan v. Cnty. of Lewis, N.Y., Civ. No. 11-754, 2013 WL 936513, at *17 (N.D.N.Y. Mar. 8, 2013) (holding that defendants' actions -- verbally harassing plaintiffs, shooting fireworks too close to plaintiffs' cabin, chasing plaintiffs in cars while honking and veering dangerously close to them, and interfering with plaintiffs' right

of way over another defendant's land -- did not constitute outrageous conduct as a matter of law).

Likewise, here, even if we were to take all of the Circuit Courts' findings of fact as true and considered all the conduct it relied upon in reaching its verdict -- whether well-pleaded or not -- we reach the conclusion that the conduct relied upon by the Circuit Court was insufficient to constitute an IIED claim as a matter of law.

Plaintiffs' actions in stopping access to the Easement road was at least arguably within their rights as property owners. Defendants' use of the Eckerle Property as a coffee farm breached a condition of the Easement and, by its terms, rendered it invalid. ("The term of this Grant . . . shall continue until . . . . the Grantee's use of the real property described . . . for any purposes other than one single family residence."). See Restatement (Second) of Torts ("Restatement") § 46 cmt. g (1977) (actor not liable where "he has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress"); see also Canto v. J.B. Ivey & Co., 595 So. 2d 1025, 1028 (Fla. Dist. Ct. App. 1st Dist. 1992) (store employee detaining plaintiffs' children for shoplifting fell well within "privilege . . . as a matter of law to engage in reckless or even outrageous conduct if there is sufficient evidence that shows the defendant did no more than assert legal rights in a legally permissible way.") (citation and internal quotation marks omitted).

Taking pictures of the Eckerle Property and those who drove to it over the easement and giving "dirty looks" to Eckerle fall within the "petty oppressions" that do not rise to the level of outrageousness contemplated by this tort. See, e.g., Swerdlick v. Koch, 721 A.2d 849, 863 (R.I. 1998) ("defendant's persistence in tracking down, recording, and reporting what he deemed to be potential zoning violations after plaintiffs moved portions of their home-based business was not unfounded" and

therefore not actionable as IIED) and Bougher v. Univ. of Pittsburgh, 882 F.2d 74, 80 (3d Cir. 1989) (two encounters in public restaurants where defendant allegedly stared at plaintiff in a menacing manner were insufficient to constitute IIED).

Plaintiffs' interference with government workers in the course of their duties, causing delay in the installation of a water meter on, and water service to, the Eckerle Property, gives us pause. However, insofar as the Circuit Court also found that there is alternative access to the Eckerle Property and there was no finding that this access was somehow inadequate, we fail to see how, by asserting their property rights over the Easement, Plaintiffs' conduct rises to the level of outrageousness.

## CONCLUSION

Therefore, the October 20, 2009 Judgment of the Circuit Court of the Third Circuit is affirmed in part and reversed in part. The entry of judgment on the Defendants' counterclaim is reversed. All other parts of the judgment are affirmed.

DATED: Honolulu, Hawai'i, June 28, 2013.

On the brief:

Mark Van Pernis and
Gary W. Vancil
for Plaintiffs/Counterclaim
Defendants/Appellees/
Cross-Appellants.

Presiding Judge

Associate Judge

Associate Judge

10